EDDINGTON MDUBA, as Administrator of the Estate of REGINA MDUBA, Deceased, Appellant, v BENEDICTINE HOSPITAL, Respondent.

Third Department, June 17, 1976

*John J. Tullman (Arthur N. Seiff* of counsel), for appellant.

*Cook & Tucker, P. C. (Vernon Murphy* of counsel), for respondent.

GREENBLOTT, J. P. This is a wrongful death action to recover for negligence against the defendant hospital. The decedent was injured in an automobile accident at 8:20 P.M. on February 6, 1971 and was admitted to defendant's emergency room at 9:15 P.M. Dr. Bitash was covering the emergency room but the record does not disclose what type of treatment, if any, was administered to the decedent by him. At 9:40 P.M. decedent was examined by her own physician, Dr. Diacovo. At 10:15 P.M. he unsuccessfully attempted to obtain a blood sample from decedent for typing and cross matching. About 10:45 P.M., a sample of blood was obtained by the attending anesthesiologist, and at approximately 11:00 P.M. an operation was commenced. Blood was administered to the patient for the first time at 12:10 A.M. but she died at 1:45 A.M.

Plaintiff contends that defendant hospital was negligent in failing to provide blood for transfusion to the decedent soon enough so as to prevent the decedent from going into irreversible shock after which she had no chance for survival. The

hospital does not have blood for transfusions on the premises but obtains blood from a laboratory operated by the City of Kingston, located approximately two blocks from the hospital. The theory presented by plaintiff was that Dr. Bitash was negligent in failing to take a blood sample from decedent and in failing to order blood, which negligence could have caused or contributed to the death of the decedent.

The trial court dismissed the complaint, holding that Dr. Bitash, who was under contract with defendant hospital to operate the emergency room, was not an employee of defendant hospital, but an independent contractor, and therefore, the defendant could not be held liable for the negligence of Dr. Bitash.

The contract between Dr. Bitash and the hospital provided that the defendant hospital was "desirous of appointing a Doctor or Doctors of Medicine to direct, supervise and operate the Emergency Room of the Hospital, on a contract basis and not as an employee or employees". The trial court's decision appears based exclusively on this contract. In *Matter of Fidel Assn. of N.Y.* (259 App Div 486, affd 287 NY 626) we considered a contract which provided that nothing contained in the agreement was to be construed as creating the relationship of employer and employee between the party of the first part and the party of the second part. We held that this provision was "not determinative of the relation in the event that the actualities indicate otherwise" *(id.,* at p 487).

The test employed is one of control in respect to the manner in which the work is to be done *(Matter of Susan Messer Assoc. [Catherwood],* 33 AD2d 952; *Dorkin v American Express Co.,* 74 Misc 2d 673, affd 43 AD2d 877). Pursuant to the contract herein, the doctor was required to render emergency care including administration of intravenous drugs and blood and patient examinations.

While conducting the operations of the emergency room, the doctor was to do so in accordance with the rules and regulations of the defendant hospital's governing board. Thus, under the contract, the doctor was not only bound to achieve a certain result, i.e., direct and supervise the emergency room, but was controlled by the defendant hospital as to the means or manner of achieving this result. Since the hospital controlled the manner in which the doctor operated the emergency room, Dr. Bitash was not an independent contractor but ·

an employee of defendant hospital *(Matter of Morton,* 284 NY 167).

Further factors are present which mandate this conclusion. The hospital guaranteed the doctor $25,000 annually, and if his fees were less than this amount, the hospital was required to make up the deficiency. The hospital provided clerical help for billing patients, and the doctor's fees were based on rates set forth in the contract. We conclude that the record points to the conclusion, as a matter of law, that Dr. Bitash was an employee of the defendant hospital and not an independant contractor.

Assuming, *arguendo,* that Dr. British was an independent contractor, we reach the conclusion that the hospital would nevertheless be responsible for his negligence. This is not a situation where the decedent engaged Dr. Bitash in defendant's hospital. The decedent entered the hospital for hospital treatment. The defendant hospital undertook to treat decedent for a charge and furnished the doctors and staff to render that treatment. Defendant having undertaken to treat decedent, which included both the necessary treatment and the furnishing of blood and other medicine needed in that treatment, was under a duty to do so effectively. Patients entering the hospital through the emergency room, could properly assume that the treating doctors and staff of the hospital were acting on behalf of the hospital. Such patients are not bound by secret limitations as are contained in a private contract between the hospital and the doctor. Defendant held itself out to the public offering and rendering hospital services (see, *Hannon v Siegel-Cooper Co.,* 167 NY 244; *Santise v Martins, Inc.,* 258 App Div 663, 664-665).

The Court of Appeals has held that a defendant who employs an independent contractor to perform services that the defendant has undertaken to perform, is liable for the negligence of the independent contractor. *(Miles v R & M Appliance Sales,* 26 NY2d 451.) In so holding, the court adopted the applicable rule from the Restatement of Torts, which provides: "One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants" (Restatement, Torts 2d,

§ 429). The rule is applicable if "the negligence of the contractor consists * * * in carelessness in the detail of rendering them" (Restatement, Torts 2d, § 429, Comment *b*).

It is, therefore, our conclusion that the defendant hospital, having held itself out to the public as an institution furnishing doctors, staff and facilities for emergency treatment, was under a duty to perform those services and is liable for the negligent performance of those services by the doctors and staff it hired and furnished to decedent. Certainly, the person who avails himself of hospital facilities has a right to expect satisfactory treatment from any personnel who are furnished by the hospital. This does not mean that a hospital will be liable under principles of *respondeat superior* for the acts or omissions performed on its premises by any and every physician or other medical attendant.

The judgment should be reversed, on the law and the facts, and a new trial ordered, with costs to abide the event.

KANE, MAHONEY, MAIN and HERLIHY, JJ., concur.

Judgment reversed, on the law and the facts, and a new trial ordered, with costs to abide the event.