THIRD DIVISION

OCTOBER 20, 1999

No. 1-98-1054

WILLIAM SCARDINA, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )

)

ALEXIAN BROTHERS MEDICAL CENTER, ) 

) 

Defendant-Appellee, )

)

and )

)

DR. RONALD LEDVORA, DR. CARLOTTA ) 

RINKE, SUBURBAN HEALTH CARE MEDICAL )

ASSOCIATES, DR. PHILLIP CACIOPPO, DR. )

S.E. NAM and BEHINFAR ASSOCIATES IN )

RADIOLOGY, ) Honorable

) Stephen Schiller,

Defendants. ) Judge Presiding.

JUSTICE CERDA delivered the opinion of the court:

In September 1995, plaintiff, William Scardina, filed an amended medical malpractice action against defendant, Alexian Brothers Medical Center (Alexian Brothers), and certain other medical groups and practitioners not part of this appeal ("the defendants"), for injuries allegedly sustained as a result of the defendants' untimely diagnosis and mistreatment of an abdominal condition.  Plaintiff asserts Alexian Brothers was vicariously liable under a theory of apparent agency for the purported negligence of Dr. S. Eugene Nam, a member of the hospital's independent medical staff.  The circuit court granted summary judgment in favor of Alexian Brothers pursuant to section 2-

1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 1996)).  Upon the court's finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) of no just reason to delay the enforcement or appeal of its ruling, plaintiff now seeks review in this court.

BACKGROUND

The following material facts, which are not in dispute, are derived from the parties' pleadings, answers to interrogatories, affidavits, and depositions considered by the circuit court in ruling on Alexian Brothers' motion and made part of the record on appeal.

In the latter part of August 1994, plaintiff experienced chronic stomach pain, diarrhea, and a fever.  On August 31, 1994, plaintiff sought treatment for his condition from his family physician, Dr. Carlotta Rinke.  Because Dr. Rinke was unavailable, plaintiff met with Dr. Rinke's associate, Dr. Ronald Ledvora.  Following an examination, Dr. Ledvora informed plaintiff that he had a possible slight inflammation of the intestine.  Dr. Ledvora prescribed an antibiotic and instructed plaintiff to schedule a follow-up visit with Dr. Rinke.

Plaintiff's condition improved slightly over the next few days.  However, by the end of the week, his condition began to worsen, and plaintiff returned to Dr. Rinke's office on September 8, 1994.

Dr. Rinke examined plaintiff and told him that he needed to be hospitalized and seen by a surgeon immediately.  Dr. Rinke called Alexian Brothers, where she enjoyed privileges, to inform the emergency room personnel that plaintiff would be arriving with a stomach condition that needed immediate attention.

When plaintiff arrived at the emergency room, he was seen by Dr. Phillip Cacioppo, a surgeon on Alexian Brothers' independent medical staff, who administered a series of X-rays.  After reviewing the X-rays, Dr. Cacioppo informed plaintiff that he had developed an abscess in his abdomen due to a hole in the intestine, and that he needed immediate surgery.  However, because plaintiff was taking Coumadin, a blood thinner, Dr. Cacioppo postponed the surgery, and plaintiff was hospitalized.  Dr. Cacioppo consulted Dr. S. Eugene Nam, who at the time was a radiologist employed by Behinfar Associates in Radiology (Behinfar Associates) and a member of the hospital's medical staff, concerning plaintiff's X-rays and the most appropriate course of treatment.  Drs. Cacioppo and Nam elected against immediate surgery, and instead decided to first drain the abscess nonsurgically.  While the abscess drained over the course of the next several days, plaintiff was given medication to reduce his Coumadin levels.  Surgery was ultimately performed by Dr. Cacioppo on September 15, 1994.

Despite Dr. Cacioppo's assurances that the abscess had been removed successfully, plaintiff continued to register a fever.  In response, Dr. Cacioppo ordered additional CT scans.  Dr. Nam, who believed plaintiff's fever was caused by another abscess, performed a fluoroscopy, which confirmed the presence of a second hole in plaintiff's intestine.  Dr. Cacioppo performed a second surgery on September 23, 1994.

Plaintiff again developed a fever following his surgery.  Dr. Cacioppo believed that an infection had entered plaintiff's bloodstream during the second procedure, and contacted an infectious disease specialist to evaluate plaintiff's condition.  In the meantime, plaintiff went into septic shock.  Plaintiff survived, but as a result sustained damage to his cardiac arteries.  To reverse the damage, plaintiff was required to undergo triple by-pass surgery.

Plaintiff subsequently filed a medical malpractice lawsuit against Alexian Brothers, Drs. Ledvora and Rinke, their employer Suburban Health Care Medical Associates, Dr. Cacioppo, Dr. Nam, and Behinfar Associates.  Plaintiff's claim against Alexian Brothers seeks to impose liability for the purported negligence of Dr. Nam while he allegedly acted as the hospital's apparent agent.  The complaint does not allege that Dr. Nam was an employee of Alexian Brothers, and it contains no independent averments of negligence directed against the hospital itself.

According to the complaint's allegations, plaintiff did not select Dr. Nam to provide radiological services while at Alexian Brothers, and was not aware at that time of Dr. Nam's employment status with the hospital.  Further, Alexian Brothers allegedly held out the services of Dr. Nam in such a manner to lead plaintiff to believe that Dr. Nam was its agent, servant or employee.

At his deposition, plaintiff stated he went to Alexian Brothers on September 8, 1994, at the direction of his family physician, Dr. Rinke.  According to plaintiff, he was not given a choice of hospitals to visit.  Plaintiff acknowledged knowing that Drs. Rinke, Ledvora, and Cacioppo were not employees of Alexian Brothers, but were rather independent contractors who enjoyed staff privileges at the hospital.  Plaintiff, however, maintained he believed Dr. Nam was an Alexian Brothers' employee, explaining that Dr. Nam "just acted like he was an employee," and that "he runs the department."  Plaintiff further indicated he understood Dr. Nam's employer, Behinfar Associates, to be an outside service that simply evaluated Dr. Nam's work "as a back up."  Plaintiff stated he had not seen Dr. Nam for any medical treatment before his hospitalization on September 8, and indicated that Dr. Nam never disclosed his employment status with the hospital to him at any time during his treatment.

Alexian Brothers moved for summary judgment on the ground that plaintiff could not show that Dr. Nam was acting as Alexian Brothers' apparent agent during the medical treatment at issue.  The circuit court agreed and granted Alexian Brothers' motion.  Plaintiff's timely appeal followed.

OPINION

Plaintiff argues summary judgment in favor of Alexian Brothers was improper because, contrary to the circuit court's finding, a triable issue of fact exists as to the apparent agency of Dr. Nam.  Summary judgment is appropriate if the pleadings, depositions, admissions, and affidavits on file show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1996); 
Golla v. General Motors Corp.
, 167 Ill. 2d 353, 358, 657 N.E.2d 894, 897 (1995).  The purpose of summary judgment is not to try a question of fact, but rather to determine if such a question exists.  
Golla
, 167 Ill. 2d at 358, 657 N.E.2d at 897.  A triable issue exists where there is a dispute as to material facts, or when the facts are not in dispute, where reasonable persons might differ in drawing inferences from those facts.  
Rothner v. Mermelstein
, 219 Ill. App. 3d 502, 506, 579 N.E.2d 1022, 1026 (1991).

This court reviews an order granting summary judgment 
de
 
novo
 (
Kotarba v. Jamrozik
, 283 Ill. App. 3d 595, 596, 669 N.E.2d 1185, 1187 (1996)), and will view the evidence
, and all reasonable inferences drawn therefrom, strictly against the movant and liberally in favor of the opponent.  
O'Banner v. McDonald's Corp.
, 173 Ill. 2d 208, 211, 670 N.E.2d 632, 634 (1996).  Because summary judgment is a drastic remedy, it should be granted only when the right of the moving party is clear and free from doubt.  
Loyola Academy v. S. & S. Roof Maintenance, Inc.
, 146 Ill. 2d 263, 271, 586 N.E.2d 1211, 1215 (1992).  Summary judgment is appropriate to determine issues of agency in medical malpractice cases.  
Northern Trust Company v. St. Francis Hospital
, 168 Ill. App. 3d 270, 276, 522 N.E.2d 699, 703 (1988).  Whether an agency relationship existed such instances is typically a question of fact to be decided by the trier of fact, and may only be disposed by summary judgment where the parties' relationship is so clear as to be undisputed.  
Northern Trust
, 168 Ill. App. 3d at 276, 522 N.E.2d at 699.

The parties agree that the supreme court's decision in
 Gilbert v. Sycamore Municipal Hospital
, 156 Ill. 2d 511, 622 N.E.2d 788 (1993), controls the disposition of the present matter.  In 
Gilbert
, the court held that a hospital can be vicariously liable under the doctrine of apparent agency for the negligent acts of a physician providing care at the hospital, irrespective of whether the physician is an independent contractor.  For a hospital to be held liable under an apparent agency theory, a plaintiff must establish that:

"'(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.'"  
Gilbert
, 156 Ill. 2d at 525, 622 N.E.2d at 795, quoting 
Pamperin v. Trinity Memorial Hospital
, 144 Wis. 2d 188, 207-08, 423 N.W.2d 848, 855-56 (1988).

Liability under apparent agency, however, will not attach against a hospital where the patient knows, or reasonably should have known, that the treating physician was an independent contractor.  
Gilbert
, 156 Ill. 2d at 522, 622 N.E.2d at 795.
(footnote: 1)
In its motion for summary judgment, Alexian Brothers does cite plaintiff's inability to establish either of the first two elements of the apparent agency analysis.  Rather, Alexian Brothers argues plaintiff can not demonstrate the third element as a matter of law
.

The supreme court in 
Gilbert
 explained that the third element requires a showing of "justifiable reliance," and is satisfied "if the patient relies upon the hospital to provide complete emergency room care, rather than upon a specific physician."  
Gilbert
, 156 Ill. 2d at 525, 622 N.E.2d at 796.  The court further elaborated:

"'the critical distinction is whether the plaintiff is seeking care from the hospital itself or whether the plaintiff is looking to the hospital merely as a place for his or her personal physician to provide medical care.  Except for one who seeks care from a specific physician, if a person voluntarily enters a hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself.  An individual who seeks care from a hospital itself, as opposed to care from his or her personal physician, accepts care from the hospital in reliance upon the fact that complete emergency room care - from blood testing to radiological readings to the endless medical support services - will be provided by the hospital through its staff.'"  
Gilbert
, 156 Ill. 2d at 525-26, 622 N.E.2d at 796, quoting 
Pamperin
, 144 Wis. 2d at 211-12, 423 N.W.2d at 857.

Notably, although 
Gilbert
 speaks of negligent treatment rendered in a hospital's emergency room, its decision
 is not limited to such factual settings, but applies to cases involving other forms of hospital care.  See 
Malanowski v. Jabamoni
, 293 Ill. App. 3d 720, 727, 688 N.E.2d 732, 737 (1997) ("we discern nothing in the 
Gilbert
 opinion which would bar a plaintiff, who could otherwise satisfy the elements for a claim based on apparent agency, from recovering against a hospital merely because the negligent conduct of the physician did not occur in the emergency room"). 

Alexian Brothers asserts that to satisfy the reliance element
 in this case, plaintiff is required to show that he came to the hospital and under the care of Dr. Nam as a result of his reliance on the "reputation" of the hospital in seeking treatment there.  According to Alexian Brothers, plaintiff cannot make this showing because, per his deposition testimony, he went to the hospital at the direction of his personal physician, Dr. Rinke.  Relying on 
James v. Ingalls Memorial Hospital
, 299 Ill. App. 3d 627, 701 N.E.2d 207 (1998), 
Alexian Brothers maintains that 
a hospital cannot be held vicariously liable under the doctrine of apparent agency where the patient went to its facility as a result of his personal physician's directions, and not because of any representations made by the hospital.

 As 
Gilbert
 clearly indicates, the focus under the reliance element is whether the patient depends on the hospital to provide care, rather than on services provided by a specific physician.  See 
156 Ill. 2d at 526, 622 N.E.2d at 796 (finding summary judgment in favor of the defendant hospital improper where the record contained conflicting evidence as to, 
inter
 
alia
, the "decedent's justifiable reliance that the emergency room care was provided by the hospital rather than by [the decedent's treating physician] or [the physician's employer] specifically").  
Thus, the relevant inquiry here is not whether plaintiff relied on the reputation of Alexian Brothers in choosing to seek treatment there, but whether plaintiff relied on the holding out of Alexian Brothers that Dr. Nam was its agent or employee when he accepted Dr. Nam's services.
  Necessarily, one must consider whether the patient in a sense placed himself in the "hands" of the hospital and looked to it to furnish the medical personnel, including doctors, essential for treatment.
  Contrary to Alexian Brothers' contention, nothing in the 
Gilbert
 decision 
indicates that the mere directives by a doctor to her patient to go to a particular hospital is dispositive of that patient's ability to demonstrate justifiable reliance.

In 
Kane v. Doctors Hospital
, 302 Ill. App. 3d 755, 706 N.E.2d 71 (1999), the court rejected a claim by the defendant hospital that was substantially similar to the claim made by Alexian Brothers in the present case.  There, the plaintiff went to one of his primary care physicians, Dr. Juranek, with abdominal pain, and requested that he approve an abdominal computerized tomography (CT) scan to ascertain the cause of his discomfort.  His doctor agreed and scheduled a CT scan at the defendant hospital for the same day.  After plaintiff arrived at the hospital, he was taken to the radiology department, where he underwent the abdominal CT scan.  A independent radiologist working at the hospital, Dr. Song, read the CT scan film and concluded plaintiff's abdomen was normal.  Plaintiff later learned following an examination by different doctors that he was suffering from a blood disorder.

Plaintiff filed a medical malpractice action against the hospital and Dr. Song, alleging that Dr. Song committed malpractice while acting as the hospital's apparent agent.  In moving for summary judgment, the hospital argued, like Alexian Brothers does here, that the plaintiff could not establish the reliance element since the plaintiff went to its facility as a result of Dr. Juranek's decision to schedule the CT scan there.  
Kane
, 302 Ill. App. 3d at 762, 706 N.E.2d 76.  Therefore, the hospital contended, the plaintiff could not have relied on any representations from the hospital or Dr. Song.  
Kane
, 302 Ill. App. 3d at 762, 706 N.E.2d 76.

In rejecting the hospital's contention on review, the court stated that "[n]othing in 
Gilbert
 *** suggests a plaintiff must make an independent determination of whether to rely on a particular hospital for treatment ***. [A] patient may rely on others to choose a particular medical facility for treatment."  
Kane
, 302 Ill. App. 3d at 762, 706 N.E.2d 76.  The 
Kane
 court found the fact the plaintiff originally went to the hospital due to the appointment made by his personal physician was inconsequential to the plaintiff's ability to establish the reliance element.  See also 
Ballard v. Advocate Health and Hospitals Corporations
, No. 97 C 6104, slip opn. at 4 (N.D. Ill. July 7, 1999) (in finding summary judgment improper for the defendant hospital, the court, citing 
Kane
, rejected the hospital's contention that the plaintiff could not establish his justifiable reliance since he went to the hospital because it was listed as a provider by his HMO); 
Monti v. Silver Cross Hospital
, 262 Ill. App. 3d 503, 507-08, 637 N.E.2d 427, 430 (1994) (finding factual question on issue of apparent agency precluding summary judgment where unconscious patient was taken to the defendant hospital by paramedics solely because of the facility's proximity to the location where the patient was injured); 
cf. 
Petrovich v. Share Health Plan of Illinois
, No. 85726, slip opn. at 15 (rejecting argument of defendant HMO that the plaintiff could not establish the reliance element because her employer, and not she, selected the choice of health providers).  We similarly find here that Dr. Rinke's directions to plaintiff does not preclude a finding of justifiable reliance in this case.  The mere fact that Dr. Rinke sent plaintiff to Alexian Brothers, without more, does not lead us to conclude as a matter of law that plaintiff did not rely on Alexian Brothers to provide for his care.

Alexian Brothers' reliance on 
James
 does not alter our determination
.  In 
James
, summary judgment entered in favor of the defendant, Ingalls Memorial Hospital (Ingalls), was upheld on appeal, in part, because the plaintiff, a minor, could not meet her burden of establishing the element of reliance.  The record showed that plaintiff's mother, who was pregnant, went to the emergency room at Ingalls to seek treatment for persistent abdominal pain and vomiting.  The mother was submitted under the care of the physician on call and subsequently gave birth to plaintiff prematurely.  As a result of her premature birth, plaintiff suffered blindness and neurological impairment. 

At her deposition, the mother acknowledged that she went to Ingalls because of her belief that she was required to go where she could use her public aid medical card, and admitted that she would have gone to Ingalls regardless of whether she knew the emergency room physicians were not Ingalls' employees.  Based on these statements, the court held the plaintiff could not demonstrate her reliance on the hospital to provide treatment "because [the mother] did not in fact rely on any representations of the hospital or the doctor in going to Ingalls."  
James
, 299 Ill. App. 3d at 634-35, 701 N.E.2d at 212.

A reading of 
James
 reveals that the court improperly held the plaintiff to a standard of detrimental reliance, which requires a showing by the person asserting apparent agency that he relied on the "holding out" of the hospital or agent to his detriment in accepting treatment (
Northern Trust
, 168 Ill. App. 3d at 278-79, 522 N.E.2d at 704-05).  See 
James
, 299 Ill. App. 3d at 633-34, 701 N.E.2d at 211-12 
(citing 
Sztorc v. Northwest Hospital
, 146 Ill. App. 3d 275, 496 N.E.2d 1200 (1986), which predates 
the supreme court's decision in 
Gilbert
 and which requires a showing of detrimental reliance, "as the seminal case on reliance in an apparent agency case").  Contrary to 
James
, 
a plaintiff need only show under 
Gilbert
 that his reliance in a particular case was justifiable.  
Chicago Title & Trust Company v. Sisters of Mary
, 264 Ill. App. 3d 913, 916, 637 N.E.2d 543, 546 (1994)).  Thus, a showing that the plaintiff would have acted differently, 
i.e.
, gone to a different hospital, had he been aware of the status of his treating physician as an independent contractor is not necessary to satisfy the reliance element.  Accordingly, we find 
James
 inapplicable to our analysis.

On the record before us, we conclude a genuine issue of material fact exists as to whether plaintiff looked to the hospital to provide radiological services as opposed to Dr. Nam or his employer, Behinfar Associates, specifically.  The record shows that plaintiff never met Dr. Nam before arriving at Alexian Brothers.  Dr. Rinke did not tell plaintiff to see Dr. Nam once at the hospital, and plaintiff did not select Dr. Nam to participate in his treatment.  Moreover, plaintiff maintained he did not know Dr. Nam was an independent contractor, and stated Dr. Nam never discussed his employment status with him.  Indeed, plaintiff claimed he believed Dr. Nam was a hospital employee.  This evidence is sufficient to raise a triable issue of fact regarding plaintiff's justifiable reliance.  
We therefore reverse summary judgment in favor of Alexian Brothers.

CONCLUSION

For the foregoing reasons, the circuit court's entry of summary judgment in favor of Alexian Brothers is reversed, and the case is remanded for further proceedings.

Reversed and remanded.

CAHILL, P.J., and BURKE, J., concurring.

FOOTNOTES
1:
The supreme court recently reaffirmed the 
Gilbert
 decision in 
Petrovich v. Share Health Plan of Illinois, Inc.
, No. 85726, slip opn. at 10 (September 30, 1999), a case addressing the vicarious liability of health maintenance organizations under the apparent agency theory.